## Owen *against* Simpson.

A writ of *fieri facias* was correctly indorsed, but the body of it had relation to a different suit. The writ was executed and returned by the sheriff as if the contents corresponded with the indorsement. A *venditioni exponas* issued, on which the land, levied upon as the property of the defendant named in the indorsement, was sold. All the other proceedings in the suit were correct. The writ of *fieri facias* is amendable, and the purchaser at sheriff's sale acquires a good title.

ERROR to the common pleas of *Butler* county.

Michael Owen and James Parker, the plaintiffs in error, were plaintiffs below, and brought this action of ejectment against William Simpson, the defendant in error, to recover a tract of land containing two hundred acres.

The following was the case stated for the opinion of the court below :

W. W. Fetterman obtained a judgment, No. 47 of July term 1826, in the common pleas of Butler county, against William Simpson and Thomas Simpson, for 35 dollars, with costs amounting to 14 dollars and 4½ cents, entered from the 1st of April 1826. On the 4th of July 1826, a precipe for a *fieri facias*, on this judgment, was given to the prothonotary, which was filed as No. 2 of October term 1826 by the prothonotary on the day after its date. A *fieri facias* then issued which was indorsed as follows : " No. 2 of October term 1826, W. W. Fetterman *v.* Thomas Simpson and William Simpson, *fieri facias*, debt 35 dollars, interest from the 1st of April 1826 ;" and a statement of the costs, 14 dollars and 4½ cents. The body of this writ purported to be a *fieri facias* in the Commonwealth *v.* John Stevenson, for a debt of 45 dollars and 26 cents. Under this *fieri facias* a levy was made on the tract in dispute as the property of the defendants, an inquisition held, and the property condemned, as appears from the return indorsed. On the execution docket at No. 2 of October term 1826, regular reference is made to the original suit, No. 47 of July term 1826. The levy was also correctly docketed. A *venditioni exponas*, W. W. Fetterman *v.* Thomas Simpson and William Simpson, then issued, No. 59 of April term 1828, on which the land was returned sold to Michael Owen and James Parker on the 11th of April 1828, for 22 dollars and 50 cents, to whom a deed was exe-

cuted by the sheriff and duly acknowledged. If the court should be of opinion that the sale was good, and that the *fieri facias* No. 2 of October term 1826 could be amended, then judgment to be entered for the plaintiffs; otherwise judgment for the defendant.

On this statement of the case the court below (Bredin, president) directed judgment to be entered for the defendant; which is now assigned for error.

*S. A. Gilmore*, for the plaintiffs in error, contended that the *fieri facias* was amendable. It was correctly indorsed, although the body of it had relation to a different suit. All the other proceedings in the sale of the land were correct. And it was not until after the eject- ment was brought, that the mistake in the *fieri facias* was discovered. 2 *Tidd's Pr.* 756, 769, 770; Welsh et al. *v.* Vanbebber et al., 4 *Yeates* 559; Peddle *v.* Hollinshead, 9 *Serg. & Rawle* 277; Black *v.* Wistar, 4 *Dall.* 267; *Com. Dig.* 476, *Amendment.*

*Purviance*, for defendant in error.

The cases cited on the other side are amendments based upon some foundation. There was something to amend. In every in- stance the defective record had something on its face by which the amendment could be made. But in the present case there was a total omission to issue a writ of any kind; and at this late period to suffer it to be amended, would prejudice the interests of third persons. The cases referred to, appear principally to be misprisions of the clerk in a *letter* or *syllable*, and are, therefore, clearly within the statute of jeofail and the decisions of the English courts. But there is no law providing for an entire omission.

The opinion of the Court was delivered by

GIBSON, C. J.—Not only has every court the power, but it is its duty to amend a clerical error which stands in the way of justice; and here it is evident the defect in the process was produced by the blunder of the prothonotary. But there is one consideration which entitles the purchaser, in a case like this, to peculiar favour. It is the course of most of our offices not to issue the writ the moment a precipe comes in; and though not expressly a part of the case, it is not too much to presume that in preparing a number of executions to be de- livered to the sheriff together, the clerk misplaced the indorsements; consequently, that the sheriff had actually in his hands a formal writ to authorize the levy when he made it. Now had the return been made on the paper containing this writ, though entitled in another cause, no irregularity could have been pretended, because, theoreti- cally, the body of the writ is every thing and the indorsement of the title nothing. But why shall not the court attach the return to the writ where their separation was accidental? In practice, the indorse- ment means more than it does in theory, as it determines the line and limit of the officer's duty, and in a measure controls the mandate

within. So far does this prevail, that an *alias* or *pluries* for an un-made residue, instead of being based according to strict form on the return of the preceding writ, and commanding further execution to be done but to the extent of such residue, issues, by the practice of most of our offices, nominally for the amount of the entire judgment, but actually for the balance, deducting the credits indorsed. This is an incongruity which doubtless mars the symmetry of the proceeding : but that it is convenient in practice and harmless in its consequences, is proved by the fact that the courts have not been called upon to correct it. It is not meant by this to encourage departures from the forms of the common law ; but it is proper to say, that the indorsement on an execution is something more than an index of its existence on the file. It is an index of the matter within ; and it contains that from which the substance of a perfect writ may be extracted. Now where there have been cross blunders in this matter, it will not be disputed that the court may set every thing right by transferring the indorsement of the title, and return to the paper containing the mandate ; and it requires no greater assumption of power to transfer the mandate to the proper indorsement : so that it would not seem to be a stretch of authority to lay hold on either the writ or the indorsement to sustain a title, like this, grown out of a *bona fide* proceeding. But, to discard the assumed existence of a formal authority in the hands of the sheriff, concurrently with the paper indorsed as such, which I admit is not a part of the case, we have the precipe directing a writ to be issued ; a levy, inquisition, *venditioni* and sale, all reciting it ; and with such materials for it, why should a court not amend? The objection is, not that there is nothing to amend by, but that there is nothing to be amended ; as, on turning from the indorsement without to the matter within, we discover what is either perfect already, though purporting to have been issued on another judgment, or else a nullity as respects the sheriff's authority to sell the defendant's land. It is undoubtedly a nullity ; but it is no more so than was the execution in Peddle *v.* Hollingshead, 9 *Serg. & Rawle* 277, which was insensible and void in its whole frame before the amendment was allowed which made it intelligible, and which, by the insertion of the words introduced, was changed in its legal effect and became a different instrument. And in Black *v.* Wistar, 4 *Dall.* 267, a variance between the judgment and the *fieri facias*, which is the defect here, with this difference that the variance is a total one, was amended by the precipe and judgment even after error brought. Here there is the judgment, the precipe, the indorsement, the inquisition and condemnation, the return of sale ; in short every thing precedent or subsequent to the blunder that could indicate its existence and extent ; and to suffer the misprision of a clerk to destroy the title of a purchaser with such materials for amendment, would be inconsistent with the liberality which is so conspicuous a feature in the practice of our day. As then the court in which the proceedings were, might have repaired

[Owen v. Simpson.]

the defect in the purchaser's title, we are bound by the terms of the case to say he is entitled to recover.

Judgment of the court below reversed, and judgment for the plaintiff.